Page 1

~ United States District Court ~
of Connecticut

2010 JUN 24 P 2:08

Mark Jarecke
V.

Brian Morphy, et al.,

Civil Action No:
3:10-CV-552 (AMC)

ORDER To Show Cause For A Preliminary
Injunction
&
Temporary Restraining Order

Upon the complaint, the supporting Declaration
of the Plaintiff, Exhibits A~Z, and the memoran-
-um of law submitted herewith, it is:
ORDERED that defendants Brian Morphy,
Doe #1, Thomas O'Connor, Doe #2, Maiga, Micheal Lajoie,
Doe #3, Suzanne Ducate, Esther Torres, Laura Maracchie,
Micheal Kingsley & Doe #4~ , show cause in room____
of the United States Courthouse, 915 Lafayette Blvd.,
Bridgeport, ct. 06604 on the ____ day of _____,
2010, at _____ O'clock, Why a preliminary injunction
should not issue pursuant to Rule 65(a) of the Federal
Rules of Civil Procedure enjoining the Defendants, their
successors in office, agents and employees and all other
persons acting in concert and participation with them, from,

1) Prohibitting the Plaintiff access to all programs

Page 2

thereby, actively violating the 14th Amendment of the U.S.C..

2) The Plaintiff's overall risk level shall decrease to a score of 1, whereas it was raised unconstitutionally without due process.

3) The Plaintiff shall be treated "without prejudice" upon all community release and program considerat ~ions, whereas it is contended by the Defendants that he is held as such.

4) The Plaintiff shall be re-diagnosed by an outside psychiatrist or psychologist if the Court deems it appropr. ~iate.

5) The Plaintiff's access to the Inmate Administrativ Remedies Proceedure will be un-restricted, and his grievances dispositioned by Defendant Murphy, at the Court's discretion.

6) The Department of Corrections shall make all necessary alterations to impliment an Administrativ Remedies Proceedure free from misconduct, and court obstruction.

7) Employee Discipline shall be provided in accordance

Page 3

With D.O.C. regulations). With the exclusion of R.H. providers
( R.H. ≈≈≈ Rogers House care providers)>

8) An "Iron Curtain" shall not exist between prisoners
and the courts.

9) More community release programs shall be established
for mental health offenders, whereas the Defendants
contend that they can only accomodate 15 since
Rogers House is the "only program" to do so.

10) The Plaintiff shall have his Parole honored.

11) All A.O.C. officials abide by the administrative
directives set forth.

12) A.D. 10.7 Inmate Communications - Para. 4, Sec. A
shall be revised as to not deny inmates materials
necessary for access to the courts, including postage.

It is further ORDERED that effective immed-
iately, and pending the hearing and determination of
this order to show cause, the aforementioned Defendant
and each of their officers, agents, employers, and all
persons acting in concert or participation with them,
are restrained from:

13) All obstructions of legal access and denial of

Page 4

materials to indigent inmates). *A.D. 10.7 (Inmate Communications)* Para. 4, Sec. II shall be thereby suspended pending proceedings).

14) Plaintiffs confidentiality throughout proceedings shall be sustained.

15) The Plaintiff shall be permitted to certify all documents to this court, whereas his channels have been obstructed.

16) The Plaintiffs' F.O.I.A. channels shall remain non-evasive, and documents provided as appropriate.

17) Officials shall HALT all violations of administrative directives.

18) The Plaintiffs' grievance restriction is thereby suspended.

19) All of the Plaintiffs' property, especially legal materials, shall be returned.

20) The Plaintiffs' program options shall be re-evaluated upon full consideration of this Declaration, as well as Exhibits a-z. As shall his Voted To Parole Date of 8-17-09.

Page 5

It is further ORDERED that the order to
show cause, and all other papers attached to this
application, be served on the aforesaid Plaintiffs by
_____.

X _____

Dated :_____

United States District Court Judge

Page 1

~ United States District Court ~
of Connecticut

Mark Jarecke, pro se          Case no: 3:10-cv-552(JHC)

Brian Murphy, ET al.          Date: March 16th, 2010

Motion For Preliminary Injunction

I. Pursuant Connecticut Federal Roles of Civil
Procedure 65(a), Plaintiff, Mark Jarecke, hereafter
cited as J, upon the courts deliberation of Exhibits a-
y, and the Declaration of this Plaintiff presented
herewith, move for swift relief from the court in the
form of a Preliminary Injunction. The facts and
testimony of said plaintiff are bolstered by the
documents attached hereto.

1) On 12-3-09 J was transferred to the Rogers House
program in Waterbury, ct. (Exhibit a- attached hereto) As
provided, J was also transferred to Rogers House on
8-3-09, and J was remanded from stated community
release program on both 9-28-09, as well as 12-7-09,
"without prejudice". These remands themselves J do
not contend with.

2) However, despite the fact that J was supposed to be
remanded "without prejudice", in Hartford c.i. J
recieved a request returned from Counselor Supervisor

Page 2

Maiga, advising that since I was only permitted the Rogers House program, out of numerous programs that accomodate transitioning prisoners with mental health scores of 3, and said program would not allow my return, that I would have my community release revoked by an overall level increase to a 2. I have not had a disciplinary report since 2006, and was not charged with violation with program provisions in accordance A.D 9.5 Code of Penal Discipline ~ Para 21, Sec A (Exhibit B - attached hereto) I recieved the said request on 12-23-09, the same day I was transferred to Willard-Cybulski as shown within Exhibit A. Let it be noted that officials had 3 days to charge and did not.

3) On 12-31-09 I discovered during a session with mental health, that my overall risk score had already been increased, without a hearing, with absolutely no due process, violating all of the provisions of A.D. 9.2 Offender Classification ~ Para 13 (Exhibit C- attached hereto). This is further bolstered by A.D. 9.1 Population Management ~ Para. 7, Sec. I-2, and A.D. 11.2 Transitional Placement ~ Para 6, Sec. K (Exhibit C). Since a revocation of a privilege is a form of punishment, officials have violated my 5th & 14th rights to due process (Community release), although only a portion of freedom is a "liberty" when taken away. (11.2 removed)

4) Moreover, since A.D. 9.2 provides in Para. 8 the Risk Assessment factors in Sec. A. and Sec. C provides that they determine the overall risk score, my Classification

Page 3

Review Sheet (Exhibit A; pg. 4 ~ attached hereto) shows no change in these scores. (See also: pg. 8)

5) Since no due process was provided, officials acted upon the presumption of guilt. However, since the search of my legal materials was not in accordance with A.D. 11.4 Searches Conducted in the Community ~ Para. 4; Sec. A-1 and my legal materials obviously read contrary to A.D. 6.10 Inmate Property ~ Para. 3; Sec. I & Para. 19 (Exhibit E ~ attached), I could have proved that the documents exhumed resulted in incorrect information with the account of Lindsay Carrington, the Rogers House assistant director who was directly involved. This incorrect information, resulted in a potential misdiagnosis by Rogers House APRN Sue Wargo, which led to my remand "without prejudice" for safety concerns. Because of this wrong information it was claimed I was suffering from a delusion, when not once during 12 years of mental health in prison and prior, with or without medication, have I ever been diagnosed with a single delusion. Even Defendant Advocate has contended otherwise in Affidavit (See: Exhibit L; re 1 diagnosises, etc.) (Exhibit A ~ A.D. 2.17 inaccurate release of info.)

6) On 12-16-09 I filed my first grievance for lack of due process, without the means to make a copy at Hartford c.i. I never recieved a reply before my 12-23-09 transfer to Cybulski c.i., a level 2. On 12-31-09, I filed duplicate grievances through both line and medical channels, whereas I presented both a custody and mental

Page 4

health issue. (Exhibit F - attached hereto) Since I addressed seperate channels, I used seperate custody and mental health informal resolutions. On 1-14-10 I recieved my initial disposition of denial for the grievance I deposited through medical channels. Torres denied my resolution of the return of my community release, because I had twice been medically remanded. On 1-19-10 I appealed this grievance to level 2 providing numerous violations of A.D. 9.2. Additionally, I cited that Defendant Torres was unqual-ified to make medically based decisions. I never recieved a response. The custody version was denied as redundant. I never recieved response to its appeal either.

7) On 1-24-10 I attempted to grieve the actions of defendant Torres herself, for her disposition without medical qualifications. (Exhibit H - attached hereto) As a result she attempted to thwart my complaint by manufacturing disposition of her own actions, acting officially in conflict of intrest, and violating A.D. 2.17 Employee Conduct - Para 5; Sec. A-1 & A.D. 9.6 Inmate Administrative Remedies - Para. 5, Sec. F, etc. (Exhibit H) There has been no reply to my appeal of her denial claiming it was redundant of the grievances within Exhibit F, although it is clearly a seperate matter to challenge her actions alone.

8) On 1-7-10 I filed my first classification appeal of my 12-21-09 risk level increase, in accordance with A.D. 9.6 - Para. 7, since it was within 15 days of my 12-31-09 discovery.

Page 5

(Exhibit H ~ attached thereto) As A.D. 9.6 paragraph 7 provides, my clearly marked "classification appeal", is a seperate matter from a grievance entirely. Moreover, since my level increase was imposed on 12-21-09, prior to Cybulski c.i., Defendant Torres could not make the initial request for an override, leaving the only applicable decision the "approval" of Director of Offender Classification & Population Manage-ment in accordance with A.D. 9.2~ Para 8; Sec. H. Therefore, pursuant A.D. 9.6~ Para. 7; Sec. I., any appeal is the authority of the Director of OC&PM, Defendant Doe. However, as Exhibit H shows, Defendant Torres again tried to thwart my complaints of accounts of misconduct as I attempted to access this court, by accumulation of more misconduct pertaining to her own actions. Since it was not her authority, Defendant Torres again attempted to misdirect my efforts toward justice by claiming my 1~7-09 "appeal", was a redundant grievance, when it was not her authority. When weighing the ramifications of this, the court must consider that the average inmate is below average intelligence, and this "iron curtain" is commonplace among H.O.C.. No disposition of my level 2 appeal has been forthright.

9) Also provided (Exhibit H), when I recieved no 30~day response in accordance with A.D. 9.6~ Para. 6; Sec. H., I attempted to re~file without reply.

10) In retrospect of numerous accumulating accounts of

Page 6

attempts to use the Inmate Administrative Remedy to
obstruct judicial access), & attempted to challenge
the integrity of the procedure itself pursuant A.D. 9.6-
Para. 6; Sec. I (Exhibit K - attached hereto, and deposited
said grievance in the box on Friday, February 19th, 2010
whereas it took a day to get copies. Since in accordance
with A.D. 9.6 - Para. 6; Sec. I the matter "shall" be eligible
for a level 3 review, and the very next business day
Torres restricted my access to the procedure, she
again violated numerous directives to obstruct my
access to this court to challenge actions, including
her own. Again actions of a Warden of A.O.C., more
typical of a criminal concealing their own crime.
(Per 9.6 "7" grievances shall be ground for abuse! "5" was mine)

11) Eventually, in response to my numerous complaints to
various defendants such as the one brought to the attention
of Defendant Murphy, mailed certified (see: grievance - Exhibit
K) on 2-22-10, at the instruction of the Attorney General's
Office Defendant Manocchio alledged, & was advised on
3-9-10, that K would be given a "hearing" to provide "due
process", on 3-12-10 (Exhibit J - attached hereto) pertaining
to my overall level increase. However, since pursuant
A.D. 9.2 - Para. 13, Sec. A-5, and all of Para. 13 for that
matter, & was to have recieved this "hearing" beforehand,
prior to the presumption of guilt & the punishment
imposed. Additionally, since a hearing is defined as "a
preliminary examination", and the term due process
contradictory to my remand "without predjudice",

cc:
Murphy

Page 7

the only thing the "hearing" did was prove that K should
have had one in the first place. The verdict had already
been decided and the punishment imposed was not even
re-considered, my documents ignored. Officials such as
Defendant Manocchio contended that K was not being
punished by the removal of my "liberty". And yet even
the _Handbook of Social Psychology_ defines the
"removal of a positive stimulus" as a form of punishment.
The contended that K could not return to community
release because of my "delusional behavior" and my
mental illness. (See Exhibit A~ pg. 6) A fixation on
Lindsay Carrington, a Rogers House employee. However,
as K have sustained, the testimony of this witness
shall provide that the poem from which staff a'r'B'n
Sue Warge formed her opinion was not the same as
the one K am alleged to have "given" Mrs. Carrington.
The very diagnosis for which K was remanded is
dependant on the incorrect information, provided by
an improper search. As the Classification Review that
also provides (Exhibit A pg. 4) K have no disciplinary,
escape or history of violence for 12 years of captivity.
and prior. The Plaintiff was presumed guilty automatically.
(See Exhibit I for opposing diagnosis/delusions & A~a.t. 2.17) (also see Exhibit A~a.t. 2.17)
12) Admittedly, K was grateful because Carrington covered
for me on my medication count for 2 months and thus,
effectively preventing my remand for prior to 9~28~09.
Because K was apologetic and grateful to this employee
for these actions, officials defined this as "delusional"

Page 8

However, as the med. chart shows discrepancies such as the 50 mg Benadryl drop 7 pills prior to the re-order of 30 on 8-21-09, initialed by Carrington on the back of pg. 1. As well as my Ditropan drop from 6 to 9 on 8-30-09, even prior to the 32 50 mg. capsules missing on 9-17-09, initialed by Carrington on the back of page 2, which went missing prior to my 8-28-09 remand. 3 bottles were taken prior to my remand, thus my "gratitude" was not a "fixation". And clearly since it was decided that my observation of these actions was "delusional", upon the factor that this never occurred, I have further undermined Wargos remanding diagnosis as well as the opinion of Defendant Advocate, with fact (See: Exhibit X - attached hereto) (See also C.N.L.§ 18-81-1c a Administration of medications; Exhibit X & a.A. 8.3)

13) To further address the "dangerous" poem for which I was remanded, which I was taught in Therapeutic Writing as a form of treatment, herein I have provided a copy of the authentic poem, praising Carringtons treatment of the "Fallen" mentally ill and apologizing for my med. abuse behavior. (Exhibit L - attached hereto) It is clearly not romantic, and obviously not dangerous. I am an eccentric writer who has been diagnosed with bipolar mania. Now I am punished for this symptom of the very diagnosis which I was supposed to be treated for. I actually afforded more respect for this ladies kindness, and would never disrespect her by imposing on her professional boundary by affording her the 7 year

for the record Exhibit X provided that the remaining medication was not to be flushed as clearly shown. This is intentional spoliation of evidence. Moreover, pages 6, 7 & 8 provide that the plaintiff was also provided the Escalith medication which he was prescribed Lithium.

Page 9

old poem that I was remanded for. Upon the presentation
of an abundance of evidence, I shall show the court
that officials have consistently been predjudicial of
my diagnosis, acting as "fortune tellers" by presuming
I will make negative choices, before I even make my
own decisions. They clearly contend that I am "quite
intelligent" on record and freely admit I am denied
all programs because of my mental illness, in spite
of the 14th Amendment § U.S.C. (also see: journal entries
9-23-09 to 9-28-09 relevant to mindset prior 9-28-09 Exhibit 2)

*poems removed because officials will not copy*
*orig included*
*I cannot*
*risk application.*

14) Again I do not challenge my return to prison itself,
but rather the denial of programs without due process,
because of my mental disability, which has varied
by diagnosis. In previous affidavit to this court Hoate
contended I was "highly functional", that I did not need
medication, and that by her own diagnosis I should not
be excluded from transfer to a lower level facility. (See:
Hoate Affidavit in Opposition of Preliminary Injunction;
Jarecke V. Hensley, 3:07 cv 1281 (JCH)) In fact it actually
took a Motion for Preliminary Injunction for me to
even have a mere mood stabilizer prescribed. Now
I am forced to stop my psychiatric medication to
lower my mental health score, so I am again,
permitted a program other inmates are not denied since
I am denied programs because of my mental illness.
(See: Jarecke V. Hensley 3:07-cv-01281-JCH; Ple. Mot. Doc No. 28, Ex. 1)

15) Yet in accordance with directives, the Director of O.C.P.M.
(Defendant Hoe) must ensure that a facility at "each security

Page 10

level" is available for reasonable accomodations
pursuant A.D. 10.19 Americans With Disabilities Act ~
Para. 9. Moreover, it is the responsibility of the Director
of Programs & Treatment (Defendant Doe), as well as
the Director of Parole & Community Services (Doe) to ensure
that interventions recieved in the community are
consistent with treatment programs offered in the
institutions as provided within A.D. 9.7 Offender
Management ~ Para. 4, Sec. D (Exhibit M~ attached
hereto) Surely since my "treatment" consists of nothing more
than a brief meeting with my prescriber once every 1-2 month
to renew my medication, until weaned, I "could" be provided a
community based program or transitional housing to uphold
my voted to parole date of August 17th, of last year. (See pg. 1-5)
{A.D. 11.1 partially removed }

16) Prior to my 12-7-09 remand I addressed concerns with
the fact I was already denied my parole, since Defendant
Kingsley had advised I would discharge my 12 yr. sentence
from Rogers House without said parole status (Exhibit N-
attached hereto) Officials did not intend to honor my V.P.P. to
begin with. N13 provides complaint responded by Avcate.

17) Currently N.O.C. contends that the denial of programs was
pending review by parole. (Exhibit O- attached hereto) Yet
although N.O.C. contends that I am "not eligible" for another
halfway house (See: pg. 1),[/2] my Classification Review Sheet
from the 3-12-10 hearing (See: Exhibit N- pg. 4) contradicts
this Classification directs me to N.O.C. (Exhibit P-
attached hereto). (see community)

Page 11

18) However, prior to the "hearing" on 3-12-10, Parole Liaison Lopez contended that it was not parole who was denying me a residential program. (Exhibit Q ~ attached thereto) And she still provides that it was not, and will not be reviewed by parole since I am held "without prejudice". That all I need is an approved sponsor (See: pg. 4). This is also contrary to my Classification Review Sheet (Exhibit H ~ pg. 4) (showing parole review). Each agency shifts "blame" in de facto guilt.

*Let it be noted that parole eventually rescinded 8-17-09 w/T.P. and since this did shows they did not initially intend to do so, it is even a liberty interest that no change other than these proceedings & grievances proves it was rip-isal.*

19) Defendant O'Connor freely admits that I am denied programs because I am a "mental health offender" (Exhibit K ~ attached thereto) However, as I have provided to the court in paragraph 15, even this contradicts directives. It is also reliant upon incorrect evidence as provided within Para. 13.

20) It is contended that on 3-12-10 I was given "due process", for a overall level increase imposed last year on 12-21-09, after the revocation of my privilege of community release. Yet, it is contended that I was and am remanded "without prejudice", for a medical opinion formed from incorrect information and "alleged" behavior, an obvious accusation of guilt without due process. Yet officials contend that they have not violated the provisions of A.D. 9.2~ Para. 13. Sec. C in "avoiding a disciplinary hearing" using classification, by admitting discrimination in status contrary to para. 1, and deliberately violating 14th Amendment equal rights protection. As well as the Americans With Disabilities Act. Their entire defense is a legal oxymoron.

21) So far all of my legal materials remain "hostage at Hours"

Page 12

House in violation of A.D. 6.10- Para. 19 as of the date of
this motion. (See: Exhibit E) And subtract 12-3-09 until 12-7-
09. there have been shostage since 9-28-09. Manocchio, etc. have
ignored my requests (Exhibit L- attached hereto), stalling
these proceedings and making any appeal of the aforemention
-ed case in this court impossible. (Jarecke V. Hensley- aforementioned.
This is re-occuring of June 3rd, 2009 remand (See Exhibit E pg 1)

22) O'Connor provides incorrect information in Exhibit B, since many
programs accomodate mental health offenders with scores of
3, which my Classification Review Sheet (Exhibit H - pg. 4) also
provides that I am. To correct this statement, Rogers House,
with a capacity of 15 inmates, is the only program which
accomodates mental health offenders who are classified as
mental health level 4, which I am not. Moreover, since there
are far more than 15 "mental health offenders" confined
within H.O.C., beneath a broader scope this is a clear
admission that all but 15 mental health offenders, who
are eligible for programs, cannot be accomodated by a
community release program because of their disability.
(See: Exhibit M for eligible programs)

23) In her 3-3-10 letter, Ducate, who seems to be the official
responsible for my continued liberty interest, would not
recommend my score decrease based on "more than one
incident in which my behavior caused concern for staff
safety at my community placement," on 3-12-10 review.
(Exhibit F- attached hereto) Since I have already addressed
my 9-28-09 remand "without prejudice", and clearly my abuse,
of my own meds, was my own safety, and a matter that shows

Page 13

require treatment rather remand to a cage without treatment, lets analyze Defendant Avcate and my 6-3-09 remand from the Shelter Now program, without predjudice a term which contradicts the foundation of her statement. On 7-31-09 Mrs. Avcate came to see me at Osborn c.i. in response to my complaints of said remand. I had proven with the med. charts from Shelter Now that it clearly stated that I was remanded for a "miscount" primarily, by an employee who was uncertified by the C.H.S.'s medication training course. Furthermore, since I was taken to an outside hospital where I was diagnosed without a risk of harm to myself or others immediately prior to this remand, the evidence contradicts Avcates 3-3-10 claims. My attorney from the aforementioned case, Stuart Hawkins, retains these documents which were discussed when Avcate and I came to an informal resolution on my prior case, as well as that remand, which was my placement in Rogers House initially on the very next business day. Since this incident consisted of solely my own medication issue, and none other than occurred "at my community placement", again my own safety was the issue for my 6-3-09 remand, which has clearly been viewed by officials in a predjudicial light. (See C.H.S. §18-81-10a.- Exhibit X) Yet Defendant Murphy, JCPM, etc. contend (Exhibit T) Now it appears that I will discharge my 12 year tribulation on 8-17-10 homeless, broke & unmedicated because the "telepathic opinions" of officials who insist on predjudicial diagnosises which I have provided were formed from clairvoyant opinions and

See → Exhibit T pg.

Additionally pg. of Exhibit T shows Avcate changed her opinion after I provided the med. evidence herein and a copy of all meds pending.

and wrong info. 2.
in violation of a.d.
(Exhibit #7

Page 14

incorrect presumptions. This in spite of the fact that the bulk
of my mental health records provide diagnosises which
contradict that of Dr. Ducate. These officials were primarily
the ones who worked with me exclusively over the years.
Her opinion in my opinion is a conflict of intrust since she
once swore affidavit against my former claim, and therefore
began in a "negative light." I should have right to another.
Why would my Rogers House stay from 12-3-09 to discharge
have been any different in regard to staff safety, than my
2 month stay from 8-3-09 until 9-28-09 without concern,
which proves contrary? If there was cause for concern then
why was I returned to Rogers House in the first place? (see:
Exhibit L for contrary diagnosis)

25) Since Ducate contends I need more treatment, yet I am in
result actually provided less, her stipulation is "moot," and
unconstitutional. Officials have provided a finding of guilt
on false grounds, yet deliberately evaded due process with
discrimination.

26) On 3-15-10 I provided my counselor, Arace, with my forego-
ing VIC 42 §1983 Complaint, Motion to Proceed, a letter to
Defendant O'Connor and my 3-13-10 "appeal" of my 3-12-
10 classification hearing decision to make legal copies.
On 3-16-10 counselor Arace advised me that she was
prohibitted from certifying my In Forma Pauperis by
Defendant Manocchio, her supervisor. Furthermore I
was denied copy of my appeal (Exhibit A) and it was return-
ed even prior to my filing, rejected as a grievance, claiming
it was repetitive of the grievances filed prior to the 3-12-10

Page 16

shows the court, officials deny further documents for
these proceedings contrary to A.H. 3.10 (less than $10.00),
because I am not technically indigent as defined in
A.H. 6.10-Para 3: Sec. E (Exhibit E) (Now officials will
not provide copies at all.)

29) This indigent policy further obstructs these proceedings.
Whereas I am now denied all legal materials, including
mailing, in accordance with A.H. 10.7 - Inmate Communic-
-ations: Para 4 Sec H and am now incapacitated in these
proceedings. I can not even certify to the court that I
am mailing a copy of this motion to the defense.
I will whereas I am not permitted to do so. (A.H. 10.7:
officials will Exhibit W - attached hereto) I can only certify the attempt
not provide with certainty. (See: A.H. 6.10- Para. 3, Sec. E / Exhibit E re:indigent
copies, or prov. 30) As per A.H. 10.7, I wrote my Unit Manager (Exhibit X-
isions, mandatory attached hereto) but was deliberately denied citing
for these proceed that I should write Inmate Legal Assistance.
-ings

31) But I.L.A. will not assist in these proceedings
(Exhibit Y - attached hereto) and I am incapacitated;
Moreover, I.L.A. also refused to assist with Jarecke V. Hensley.
32) My Defendant Torres (Exhibit Z - attached hereto),
since I cannot even file grievance (also See: Exhibit
H) or pursue this obstruction without judicial action, my
claim remains severely hindered and itself suffers "ongoing injury".
33) Consequences must remain a 2-way street and this
obstruction of liberty exposed. The abuse of the grievance
procedure to best the "iron curtain" and conceal this

Page 16(b)

Paragraph 30 continued - In addition to proving that I am denied basic legal mail, my access to the privileged unfranked is obstructed in clear violation of A.A. 10.7 - Para. 4; Sec. J also. Xim. Webster's also defines franked as "to put an official mark on (a piece of mail) so it can be sent free of postage", or "to place a stamp or mark on (a piece of mail) to show payment of postage", unfranked should be defined as contrary. However, as the foregoing directive provides", correspondence shall be inserted into an envelope", etc., and upon the courts examination of Exhibit X (pg. 2-4) provides, I have even went so far as to cite the directive on the envelope copied for the courts review on pg. 4, yet my unfranked "correspondence is redundantly returned for being mailed in unauthorized envelopes". Clearly there has been no exception by the Commissioner pursuant to Para. 8 of A.A. 10.7. Since the only envelopes provided on commissary are "stamped envelopes" (pg 5 of Exhibit X), and the facility refuses all envelopes, including legal, citing Para. 4; Sec. A, What exactly are "authorized envelopes" and where might I locate these elusive items? This is a redundant violation, and proven deliberate since the envelopes "unfranked", I have attempted to use, even cite directive, I have even tried no envelope at all and correspondence has been returned opened. It is irrefutable, as provided in evidence before the court, that even my privileged correspondence is obstructed and "delayed", contrary to A.A. 10.7 - Para. 4; Sec. J. Evidently there is an "iron curtain".

*partial evidence*
*original evidence upon*
*"vanished" previous mailing*

Page 17

elaborate misconduct of officials is echoed in my former case, Jarecke V. Hensley, 3:07 cr 1281 (JCH). Yet it is a more difficult measure and a broader scope before the court in the fact that most prisoners are incapable of exposing the deception of malevolent authorities, which undermine their rights as commonplace. Consequences must remain a 2-way street. Herein I set aside my own resolution of the return of my property and community release, expecting it moot after my 8-17-10 end of sentence if my "liberty interest" is not heard prior. Yet this challenge I will attempt to pursue thereafter.

34) Branding another human by a number is degrading of that being and shown within the Handbook of Social Psychology as an element of brainwashing. I am not a mere number among a lottery of societies rejects, and although my writing is sometimes misconstrued, the only thing the defense can prove I am guilty of is hoping an official could set aside that number and treat me as a person too. Forgive me if there is no manual instructing me on "inappropriate behavior" after 12 yrs among vultures & thieves.

35) I do not contest with my remand itself but actually condone it, because everyone has the right to feel safe. I only pray that the court view it in absence of predjud-icial light since I was provided my due process prior to the revocation of my community release, and officials contend that is the case. I respect Carrington's concern, but would never disrespect her by deliberately acting inappropriatly.

Page 18

36) However, I do not respect the fact that officials violate my equal rights protection and have revoked my liberty upon the presumption of guilt without due process, rather, I.e., without prejudice.

37) I do not respect the fact that I am now denied programs due to my mental illness, as the result of a diagnosis based upon the wrong information, assumed during a search violating directives, which resulted in my demand. Officials are becoming as underhanded as the prisoners confined.

38) I do not respect the fact that officials have attempted shroud this court's eyes from the trampling of numerous directives and the deliberate violations of state and federal laws which I have proved to the court therein. Their position is clearly that inmates should have no rights.

39) I do not respect the fact that I can prove I have been provided primarily deliberate indifferent mental health care since 2002, and I am now forced to stop the meds that are helping me, in a desperate attempt to lower my mental health score so I might recieve a program I so direly need after 12 years of institutional-ization. My current care is no exception since I am forced to reside in a dorm without the meds. which have made it bearable, in spite of the fact that I've returned to a level 3 for my safety in 2006 because of duress as provoked by these very conditions. However, I do not respect the fact that officials seem to be



Page 19

afforded no discipline in accordance with A.A. 2.6
Employee Discipline, (Exhibit 3~ attached hereto) which
would seem to be an inactive regulation, despite numerous
misconduct accounts, and directive violations provided
herein.

40) I, as the Plaintiff provided herein, have shown clear and
redundant violations of the 14th Amendment, administr-
ative directives, regulations and statutes that should
appall the very fundamental principals of "protection"
on which this court is built upon. Wherefore I bring
forth this action and move for a Preliminary Injunction.

II. Wherefore, I, the Plaintiff herein, prays for relief
in the following forms:

1) Upon consideration of paragraph 1~40 of this Declarat-
ion & Exhibits a~3, I beckon the courts favor in
my accompanying Motion For Appointment of
Counsel. I have no formal training and my routes to
attempt to locate counsel are blocked.

2) I am requesting that my level be restored as overall risk
level 1, whereas it was raised unconstitutionally. This will
again make me eligible for program consideration.

3) I ask to actually be treated "without predjudice" in all parole
and program considerations, whereas it is the Defendants'

Page 20

 contention.

4) The Court shall order its own psychiatric examination
 Pursuant Rule 35(a) if it is in the intrest of justice.

5) My restriction to the Inmate Administrative Remedies
 Proceedure shall be lifted, whereas it is unconstitutional.

6) Said grievance proceedure should be investigated, and
 all unconstitutional obsticles removed.

7) All misconduct related to should be firmly disciplined,
 whereas it now serves to misdirect the courts scope of
 deeper layers of negligence and misconduct.

8) Employee discipline should reinforce N.O.C. administrative
 directives and regulations.

9) No "Iron Curtain" should exist between prisoners and the
 courts.

10) More community release programs should be established
 for mental health offenders, since officials contend
 there is only one & am eligible for therein.

11) A.N. 10.7 Inmate Communications should be revised
 to halt non-indigent inmates obstruction regarding
 legal materials and channels (See: Para. 4, Sec.A)

Page 21

12) Legal confidentiality should be reinforced.

13) Freedom of Information Act requests should remain non~evasive, appropriate, and documents accessible to non~indigent inmates who are without funds.

14) All of the provision provided upon the Court's Order should be reinforced.

15) Upon consideration of this Motion with Declaration, and Exhibits A~Z, I move that these proceedings should have tipped decidedly in my favor.

〈Conclusion〉

III. The Plaintiff moves that his Motion For Preliminary Injunction & Temporary Restrain~ning Order be sustained.

16) Moreover, the Plaintiff moves to proceed without certification to the Defendants', Whereas he is prohibitted materials & postage in accordance with A.A. 10.7- Para. 4; Sec. A, since he had more than $5.00, approximately 60 days ago & ~$0.00 current (See also: Exhibit E~A.A. 6.10 Para. 3; Sec. E ²indigent)

17) The Plaintiff, Mark Eric Jurecke contends that consequences most remain a 2-way street.

18) He implores for the courts' swift injunctive relief...

Page 22

19) He moves for the appointment of Attorney Stewart Hawkins (At: Schepro & Blake) ~ 2051 Main St., Stratford, ct. 06615 ~ 6341 / Phone: 1 ~ 203 ~ 377 ~ 0770)

20) With no training and acting pro se, the Court should find that his challenge is on too many fronts for a solitary person to contend, at minimum. He will be potentially incapacitated in these proceedings.

X I do hereby swear, under penalty of perjure, the foregoing to be true to the best of my knowledge.

Plaintiff: X Mark Jarecke, pro se  3-16-10

X I do hereby certify, that I am not permitted provisions to furnish a copy of the forgoing to the Defendants, in accordance with A.R. 10.7 ~ Para 4; Sec. A (indigent policy). (See: Exhibit E ~ A.R. 6.10 ~ Para 3; Sec. E), (See: Exhibit W ~ A.R. 10.7)

Plaintiff: X Mark Jarecke, pro se  3-16-10

Page 1

~ United States District Court ~
of Connecticut

Mark Jarecke,
V. Plaintiff

Civil Action No:
3:10-CV-552-RNC

Brian Morphy, et al.
Defendants

Date:
~~March 10th, 2010~~
May 23rd, 2010

Memorandum of Law in Support of
§ Preliminary Injunction §

I. Introduction:

The Plaintiff brings an action against Defendants Brian Morphy, Acting Commissioner of the Department of Corrections, Director of Parole & Community Services John Doe #1, Parole Manager Thomas O'Conner, Director of Classification & Population Management John Doe #2, Counselor Supervisor Maiga, District Administrator Micheal Lajoie, Director of Programs & Treatment John Doe #3, Director of Psychiatric Services Dr. Sozanne Ducate, Warden Esther Torres (Cybriski c.i.), Counselor Supervisor Laura Manocchio, Rogers House Program Director Micheal Kingsley, and John & Jane Does unknown, for claims rising from the 8th & 14th Amendments of the United States Constitution, as well as the Americans With Disabilite Act of 1990.

II. Standard of Review:

Page 2

To obtain preliminary injunctive relief, the moving party must demonstrate (1) that it will be irreparably harmed in the absence of an injunction and (2) either(a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer V. W. Brondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000).

A Federal Court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity" Vorbeck V. Mc Neal, 407 F. Supp. 733, 739 (E.D. Mo.), aff'd 426 V.S. 943 (1976) To demonstrate irreparable harm, the Plaintiff must show "an injury that is neither remote nor speculative, but actual & imminent" and that cannot be remedied by an award of monetary damages." Shapiro V. Cadman Towers Inc., 51, F.3d 328, 332 (2d Cir. 1995) (quoting Tucker Anthony Realty Corp. V Schlesinger, 888 F.2d 989, 975 (2d Cir. 1989)). The Plaintiff presents an ongoing liberty interest before the court. Officials not only hinder his access to this court, if his case is not heard prior to his end of sentence on August 17th, 2010, his claim itself will suffer "irreparable charm" since any relief pertaining to his expired parole date of August 17th, 2009, or community release will be made moot thereafter. Lewis V. Casey, 116 S. Ct. 2174, 2180 (1996) (quoting Rounds V. Smith, 430 V.S. 817

Pag. 3

(1977)); Id. at 2179-2180.

III. Due Process:

Community release, or pre-parole
release is sufficiently similar to parole to require
due process safeguards. Young V. Harper, 117 S. Ct.
1148, 1152-53 (1997). Punishment as a term itself
is defined within The Handbook of Sociology 3rd
Edition (Lindzey Aronson) as "negative stimulus applied
or a positive stimulus removed." Moreover, Webster's
dictionary defines the term as, "To subject to a penalty
for a crime, fault, or bad behavior." On 12-21-09 the
Plaintiff's community release was revoked by a
level increase, without any hearing or due process
whatsoever as a result of allegations of inappropr-
-iate, and thus bad behavior. This resulted in a
revocation of freedom, and "atypical and signific-
-ant hardship... in relation to the ordinary incid-
-ents of prison life." Sendin V. Conner, 515 V. S. 472,
484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995); Miller V.
Selsky, 111 F. 3d 7, 9 (2nd Cir. 1997); Brooks V. Di Fasi, 112
F.3d 46 (2d Cir. 1997). Officials deliberately violated
the provisions of directives such as A.D. 9.2 Offender
Classification ~ Para. 13 (Exhibit C), A.D. 9.1 Population
Management ~ Para. 7, Sec. A-2; & A.D. 11. 2 Transitional
Placement - Para. 6, Sec. A (9.1 & 11.2 also Exhibit C) to
evade the Constitutional right of due process which is
protected by the authority of the 14th Amendment

Page 4

Webster's dictionary also defines a "hearing" as "a preliminary examination of an accused person", and of course preliminary meaning "before or preparing for the main matter, action, or business". Wolff V McDonnell, 418 U.S. 539 (1974) describes "due process" as the right to: 1) written notice of disciplinary violation, 2) right to call witnesses at hearing, 3) assistance in preparing for a hearing 4) a written statement of reasons for being found guilty & 5) a fair & impartial decision-maker in the hearing. Since Webster's also defines the term "due process" as "an established course esp. for judicial proceedings designed to protect the legal rights of the individual" it should be construed that due process, or a hearing per se, is fundamentally the right to a finding of guilt "before" a punishment or consequence is imposed. However, herein the plaintiff provides a clear showing of the consequence of a level increase, resulting in the revocation of community release (Exhibit R) upon the 12-21-09 override of his overall risk score, due to the allegation of inappropriate behavior. (Exhibit R) Prior to his 12-23-09 transfer to a level 2 facility, the Plaintiff was found guilty without hearing or any due process whatsoever, and the punishment of the revocation of his community release imposed.

In retrospect of the Plaintiffs' numerous grievances which were "stonewalled" for months, as well as clear warning of pending proceedings and ignored attempts at classification appeals pursuant A.D. 9.2 (Exhibit F, G, H, & K), numerous open ended appeals acting as an

Page 5

obstruction of the mandatory exhaustion requirement
(42 U.S.C.A. § 1997 e(e)), resulting in a literal restriction
from exhaustion (Exhibit 4), at the instruction of the
Attorney General's office, officials attempted to cover
up redundant violations of the Plaintiff's right to due
process, after a finding of guilt and a punishment imposed
(Exhibit J) First, officials' "failure to act in the face
of known violations of its written policies is relevant
circumstantial evidence to show knowledge and
state of mind", Woodward V Correctional Medical
Services, 368 F.3d 917, 930 (7th Cir. 2004). By providing
a so called "hearing" on 3-12-10, it is contradictory of
the term to provide "due process"; months after the revocat-
-ion of liberty was already imposed. Moreover, as Exhibit
J also provides, the "hearing" was to "inform" the Plaintiff
of his "classification status". No change in status was ever
considered thus it was merely intended to clean up "spilled
milk" by an advisement of a consequence already afforded.
Relevant to the conditions afforded by officials' knowledge
of misconduct, acting with additional misconduct to shield
it from this court, it is clear that "Patently ineffective
gestures purportedly directed toward remedying objectively
unconstitutional conditions do not prove a lack of
deliberate indifference, they demonstrate it. Coleman V.
Wilson, 912 F. Supp. 1282, 1319 (E.D. Cal. 1995) The
Plaintiff had right to the provisions of A.D. 9.2
Offender Classification~ Para. 13 and Exhibit H provides
clearly that the Plaintiff was even denied his right to

Page 6

appeal within 15 days in accordance with Para 16.
(See: 2.21 Exhibit C) He was deprived of life, liberty, or
property, without due process of law; undermining the
due process right provided by the 14th Amendment.

## IV. Discrimination:

Nor shall any State "deny to any person
within its jurisdiction the equal protection of the laws".
(14th Amendment cont'd) Yet officials condone their evasion
of due process laws by contending an oxymoron. They
contend that the Plaintiff is denied all programs,
because of his "inappropriate behavior", and is held "without
prejudice" as a result of behavior. Websters dictionary
defines the term prejudice as "an adverse opinion or
judgement formed beforehand or without full knowledge
or complete examination of the facts". Since no hearing
was held whatsoever before 12-21-09 overall level
increase, clearly the only thing the Plaintiff was
without, was the "without".

But in spite of the Plaintiff's inability to call
witness Carrington (Exhibit J), and the fact that he
could prove that he was remanded from the incorrect
documents exhumed from his property as elaborated in
Paragraph 5 of the forgoing Motion for Preliminary
Injunction with his Declaration and evidence supporting,
officials contend that he is denied all programs, resulting
in a denial of parole as well, because of his mental
illness. However, as Exhibit M provides, several

Page 7

programs accomodate transitioning prisoners with mental health scores aside from Rogers House, which it is contended he cannot return to because of behavior for which he was never afforded due process.

"Similarly situated people must be treated alike", Giano V. Senkowski, 54 F. 3d 1050, 105·7 (2d Cir. 1995) The Americans With Disabilities Act extends the equal rights protection provided by the 14th Amendment to assure that "no one shall be denied (programs)", etc. based on their disability." (42 U.S.C. § 12132 (1994)) This includes mental illness. (28 C.F.R. 35.104 (1996)) The classification system itself "shall not foster discrimination in status" in accordance with A.D. 9.2 Offender Classification Para. 1. Yet as Exhibit A provides, there have been no changes in any of the factors determining the Plaintiffs overall risk score. (See: 9.2 at Exhibit C) (Para. 8) Including the mental health score). Classification has avoided a disciplinary hearing by affording punishment without charge or due process. (Para. 13) The Plaintiff now is afforded minimal mental health treatment as shown within Paragraph 15 of foregoing Motion For Preliminary Injunction. Moreover, as provided within A.D. 10.19 Americans With Disabilities Act - Para. 9 (Exhibit M), Defendant Doe as the Director of I.C.P.M. "must" ensure that a facility at "each security level", including level 1, is available to accom- odate the Plaintiff. And the Director of Programs (Doe), as well as Parole (Doe), "must" ensure that community interven -tions are institutional equivalent. (Exhibit M; See A.D. 9.7

Page 8

Offender Management - Para. 4, Sec. B) (In conclusion, Officials) freely contend that they do not have to provide due process, because they have the right to deny the Plaintiff equal protection because of his disability, a plain, and simple fact...

V. Administrative Directives:

What purpose does a regulation serve when officials are freely allowed to trample them without consequence? Since exhaustion of the grievance procedure was made impossible by Defendant Torres, who has redundantly acted in conflict of intrest to obstruct this requirement (See: Motion for P.I.; Para. 6-11), Now exhaustion is clearly futile. Patsy V. Board of Regents, 457 V.S. 496, 511 n 12 (1982) However, this obstruction in itself should now face the scrutiny of this court, where it is most certainly echoed throughout numerous cases. If the Plaintiff who was also unable to satisfy this requirement in Jarecke V. Hensley, 3:07cv 1281 (JCH), and contended by Defendant Ducat to be "highly functional", could not do so, the court should seriously weigh the fact that the majority of the inmate populat-ion are regularly "duped" by this "ruse".

Within his Motion For P.I. the plaintiff provides in Para. 1-4, and Exhibits a-4, a trampling of regulations and a liberty intrest in itself that officials abuse the Administrative Remedies procedure regularly to "cover their tracks" collectively. However, a liberty intrest is

Page 9

created by statute or regulation if it limits the discretion of officials. *Kentucky dept. of Corrections V. Thompson,* 490 V.S. 454, 462, 109 S. Ct. 1904 (1989); *Olim V. Wakinekona, 461 U.S.* at 250; *Wisdom V. Farno, 422 U.S.* at 226-27; *Connecticut Bd. of Pardons V. Dumschat,* 452 V.S. 458, 466-67, 101 S. Ct. 2460 (1981); *Mendoza V. Blodgett,* 960 F.2d 1425, 1428 (9th Cir. 1992), cert. denied, 113 S. Ct. 1005 & 113 S. Ct. 1027 (1993).

The most common way of limiting discretion is to use "explicitly mandatory language" in connection with requiring substantive predicates. *Hewitt V. Helms,* 459 V.S. 460, 472, 103 S. Ct. 864 (1983); accord, *Kentucky Dept. of Corrections V. Thompson,* 490 V.S. at 462; *Board of Pardons V. Allen,* 482 V.S. at 378. Of course this is echoed perpetually throughout the judicial system. Conclusively "An agency is generally required to follow its own regulations." *Doe V. Tenet,* 329 F.3d 1135. "Consistent and repeated failures, over an extended period of time could establish diliberate indifference." *Langley V. Coughlin,* 715 F. Supp. 522, 537-41 (S.D. N.Y. 1988) The Plaintiff contends that fundamentally this terminology should apply, whereas consequences most remain a 2 way street.

V. Access to the Courts:

Officials blatantly disregard directives to cover their tracks, yet the Plaintiff has provided that this is not the case regarding his access

Page 10

to the court as shown within Para. 29 of the forgoing Motion for P.I.S.. Additionally, Para. 27 & 28 provide restrictions regarding the Freedom of Information Act compliance also. The Plaintiff is forced to adapt to a battle on too many fronts without counsel as he adapts to an underhanded defense expert in evasion tactics.

Pursuant A.H. 10.7 Inmate Communications ~ Para. 4, Sec. H (Exhibit W) the Plaintiff is now denied all legal materials, including envelopes which will now not only halt this access to this court, he cannot even certify copies of motions to the defense, wherefore, he is incapacitated by officials in these proceedings. Exhibit X provides the Plaintiffs attempt at inform- ~al resolution. Exhibit Z provides that the Plaintiff is "exhausted by grievance restriction". Herein the Plaintiff has provided clear proof that he is denied necessary materials, such as envelopes and postage, required to "present claimed violations of fundamental constitutional Rights to the courts", Lewis V. Casey. 116 S. Ct. 2174, 2180 (1996) (quoting Bounds V. Smith, 430 US 817 (1977)). His claim has & will suffer "actual injury" if not heard before his E.O.L. of August 17th, 2010. Whereas any injunctive relief sought will be made moot. (Id. at 2179~2180) (See also: Exhibit 3 ~ A.H. 6.10 Para. 3, Sec. E (Re: indigent)

**VII. Conclusion:**

Since the Plaintiff remains remanded

Page 11

from community release and denied programs, injunctive relief will only be possible and his claim will suffer irreparable injury if not heard before his end of sentence on August 17th, 2010. With Declaration and evidential Exhibits A~Y, he has shown a likelihood of success on the merits of his case or sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in his favor. Time Warner Cable, Inc. V. Directv, Inc., 497 F.3d 144, 152~53 (2d Cir.2007)

    Wherefore, the Plaintiff moves that upon the Courts deliberation of the foregoing, that this Motion For Preliminary Injunction be sustained since "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12101 et seg (1994); 42 U.S.C. § 12131-12132. Due Process and the absence of, or discrimination, either way the Defendants have knowingly undermined the 14th Amendment of the United States Constitution.

Very Respectfully,

Mark Jericko

3-16-10

391 Shaker Rd.

Enfield, ct. 06082

Page 12.

I hereby certify that a copy of the foregoing has been mailed to the following, unless prohibited by Officials as provided therein. (See: L.R. 12.7 - Para. # Sec. E at Exhibit E)

Office of the Attorney General
MacKenzie Hall
110 Sherman St.
Hartford, Ct. 06105

X _Mark Jarecke_ 3-16-10

X _Mark Jarecke_ 5-23-10